ELECTRONICALLY
FILED
Mar 09 2020
U.S. DISTRICT COURT
Northern District of WV

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION**

| | |
|---|---|
| **BETTY BOLES, as Administratrix of the**<br>**Estate of KHAALID SHARIF**<br>**FREDERICK,**<br><br>   **Plaintiff,**<br><br>**v.**<br><br>**The UNITES STATES OF AMERICA,**<br><br>   **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. _1:20-cv-41_____

Judge Keeley

## COMPLAINT

**COMES NOW**, Betty Boles, as Administratrix of the Estate of Khaalid Sharif Frederick, by counsel, and for her Complaint states and alleges as follows:

## JURY DEMAND

1.      The Plaintiff hereby demands a trial by jury.

## NATURE OF THE ACTION

2.      This is an action against Defendant the United States of America under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1) and 2671 *et seq.*, for the wrongful death of Khaalid Sharif Frederick following an incident on June 21, 2017 while he was under the custody and control of the Federal Bureau of Prisons at Hazelton Penitentiary in Preston County, West Virginia.

3.      Plaintiff has fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Tort Claims Act.

4.      By letter dated September 10, 2019, the Federal Bureau of Prisons, an agency of the United States of America, denied Plaintiff's claim for the wrongful death of Khaalid Sharif

Frederick, which tolled the statute of limitations for this claim for six (6) months, until March 10, 2019.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1346(b)(1) in that this action arises under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1) and 2671 *et seq*.

6.    Venue is proper because the incident giving rise to this Complaint occurred in the Northern District of West Virginia, Clarksburg Division.

## PARTIES

7.    Plaintiff Betty Boles (hereinafter "Plaintiff") was at all times relevant hereto a resident of Halifax County, North Carolina.

8.    The Federal Bureau of Prisons (hereinafter, the "FBOP") is a federal agency under the United States Department of Justice, which is a department of the United States of America. Even though the FBOP, through its agents and employees acting within the scope of their employment, is the party responsible for the death of Khaalid Sharif Frederick, the United States of America is the proper Defendant in this action pursuant to 28 U.S.C. § 2679(d)(2).

9.    The FBOP is responsible for the care, custody, and control of inmates in federal prisons.

10.    According to the FBOP, its mission is "to protect society by confining offenders in the controlled environments of prisons and community-based facilities that are safe, humane, cost-efficient, and appropriately secure, and that provide work and other self-improvement opportunities to assist offenders in becoming law-abiding citizens."

11.    According the FBOP, its core values are: "Correctional Excellence – We are correctional workers first, committed to the highest level of performance.  Respect – We embrace

diversity and recognize the value and dignity of staff, inmates and the general public.  Integrity – We demonstrate uncompromising ethical conduct in all our actions."

12.    According to the FBOP, it is committed to providing: "(a) a safe environment for both staff and inmates; (b) Secure institutions to confine offenders and protect the public. (c) Those skills building programs we can afford, to offer inmates the opportunity to live crime-free lives. (d) Service and stewardship to the public and a continued tradition of excellence; and (e) Staff who are ethical, professional, well-trained, and diverse."

## FACTS

13.    Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 12 as though fully set forth herein.

### USP Hazelton: A Culture of Violence

14.    At all times relevant hereto, Khaalid Sharif Frederick (hereinafter "Mr. Frederick") was an inmate at the United States Penitentiary in Bruceton Mills, West Virginia (hereinafter "USP Hazelton").

15.    USP Hazelton is a high-security prison that houses approximately 1,270 male inmates.[1]

16.    According to a February 1, 2018 *Chicago Tribune* news article, UPS Hazelton has been plagued by violence and understaffing of prison personnel for years.[2]

17.    A 2016 report from the District of Columbia's Corrections Information Council said that prisoners warned officials at USP Hazelton that, "Inmates can lose their lives quickly here."[3]

---

[1] https://www.chicagotribune.com/nation-world/ct-violence-west-virginia-prison-killing-20181101-story.html
[2] *See id.*
[3] *See id.*

18.    In 2018, members of the United States Congress wrote to the United States Attorney General about what they called "dangerous continual understaffing" at federal prisons in West Virginia and Pennsylvania and stated their alarm about recent deaths at USP Hazelton.[4]

19.    In an October 2018 letter, a member of the United States Congress asked the Justice Department's Inspector General to launch an investigation into the conditions at USP Hazelton, raising concerns about the "brutal treatment" of inmates at the prison and queried whether the rash of recent inmate deaths "may be indicative of larger, ongoing problems at the facility."[5]

20.    In this October 2018 letter, the member of Congress stated that, "Based on the evidence presented to my office, I believe that federal employees serving in this facility have likely received inadequate training, are under-supported, and are being compelled to perform duties outside the scope of their positions and their training..."[6]

21.    The Executive Vice President of the American Federation of Government Employees Local 420, which represents USP Hazelton prison guards, said the death of high-profile inmate James "Whitey" Bulger in 2018, "outlines how dangerous this prison is."[7]

22.    According to prison guard union officials, USP Hazelton is operating at about seventy-five percent (75%) of its staffing level and has dozens of vacant positions, even though the union voiced concern about understaffing at the prison as far back as 2015.[8]

23.    According to a November 1, 2018 CBS News article, "Long before notorious Boston mobster James "Whitey" Bulger was killed at [USP Hazelton], lawmakers, advocates and even prison guards had been sounding the alarm about dangerous conditions there.  But there has

---

[4] *See id.*
[5] *See id.*
[6] https://www.nbcnews.com/news/crime-courts/notorious-mob-boss-whitey-bulger-found-dead-prison-n926266
[7] *See id.* at n. 1.
[8] *See id.*

been no public indication that federal prison officials have taken action to address the safety concerns, even as Bulger's killing marks the third at the facility in the last six months." [9]

24.     According to an independent government commission, USP Hazelton "has been overcrowded for years."[10]

25.     According to CBS News, USP Hazelton has garnered a grim nickname among inmates: "Misery Mountain."[11]

26.     According to a February 5, 2019 WDTV News 5 article, the President of Local 420 of the America Federation of Government Employees, who has worked at USP Hazelton for more than a decade, stated that the prison has "gotten more violent and more understaffed in the last few years."  He attributes the increase in violence to understaffing at the prison.[12]

27.     West Virginia Congressman David McKinley has voiced concerns about the staffing situation at the USP Hazelton, stating that "There's a staffing problem here. And it's showing up."[13]

### Mr. Frederick's Death

28.     On June 19, 2017, Mr. Frederick was involved in an incident with another inmate in the C-2 Housing Unit at USP Hazelton.

29.     During the altercation, Mr. Frederick sustained puncture wounds to his stomach and back.

30.     Due to his injuries, Mr. Frederick was sent to Ruby Memorial Hospital in Morgantown, West Virginia for treatment.

---

[9] https://www.cbsnews.com/news/whitey-bulger-dead-misery-mountain-violence-plagued-west-virginia-prison-hazelton/
[10] *See id*.
[11] *See id*.
[12] https://www.wdtv.com/content/news/5-News-Investigates-Death-Sentence-505386231.html
[13] *See id*.

31.     At Ruby Memorial Hospital, x-rays and CT scans of Mr. Frederick's chest and pelvis were negative for trauma or acute injury, finding that his "superficial" stab wounds involved "only the subcutaneous fat of the body wall."

32.     Mr. Frederick was kept at Ruby Memorial Hospital overnight for observation, then discharged back to UPS Hazelton the next morning, on June 20, 2017.

33.     The following day, June 21, 2017, at approximately 9:30 a.m., Mr. Frederick was in his cell when he told a USP Hazelton prison guard that he fell and needed to be seen by the prison medical staff.

34.     Mr. Frederick was placed in hand restraints and moved to a holding cell, where he then fell to the floor and became nonresponsive.

35.     Mr. Frederick was placed in a wheelchair and taken to the Health Services exam room in the C-2 Housing Unit.

36.     In the Health Services exam room, Mr. Frederick stopped breathing and did not have a pulse.

37.     At approximately 9:40 a.m., CPR was initiated and a defibrillator applied due to Mr. Fredrick's lack of a pulse.

38.     Mr. Frederick was then moved via gurney to the Health Services Department trauma room.

39.     In the Health Services Department trauma room, Mr. Frederick was intubated, while CPR and use of the defibrillator continued.

40.     Paramedics arrived on the scene at 10:18 a.m. and pronounced Mr. Frederick dead at 10:22 a.m.

41.    A Bureau of Prisons Health Services Encounter record indicates that Mr. Frederick suffered "cardiac arrest."

42.    However, an autopsy performed on June 22, 2017 by the Office of the Chief Medical Examiner for the State of West Virginia revealed that Mr. Frederick sustain seven (7) stab wounds to his back and chest prior to his death.

43.    According to the autopsy, Mr. Frederick died from a deep abdominal stab wound that perforated his diaphragm and left lung, causing it to collapse.

44.    Mr. Frederick's autopsy also revealed other injuries, including a contusion to the right forehead, laceration on the nose, contusion to the left temple, laceration on the left face under the left lower eyelid, laceration of the left upper lip, laceration under the left naris, contusion on the left lip and buccal mucosa, hemorrhage on the right parietal scalp and temporal muscle, hemorrhage on the left temporal scalp, abrasion on the right shoulder and right upper arm, contusion to the left middle back, laceration with abrasion on the right flexor forearm, four (4) contusions with abrasions on the medial surface of the left upper arm, multiple contusion over the knuckles of the right thumb, second, third, and fourth fingers, contusion of the right dorsal surface of wrist, contusion of the right knee, and contusion of the right shin.

45.    The autopsy report from the West Virginia Medical Examiner's Office lists Mr. Frederick's cause of death as a homicide.

46.    Upon information and belief, on June 20, 2017 or June 21, 2017, Mr. Frederick was attacked by another inmate at USP Hazelton, wherein he sustained the stab wound (and other injuries) that caused his death.

47.     Upon information and belief, the inmate that attacked and stabbed Mr. Frederick on June 20, 2017 or on the morning of June 21, 2017 was the same inmate Mr. Frederick was involved in an altercation with on June 19, 2017 or someone associated with said inmate.

48.     On May 9, 2018, Plaintiff sent a Freedom of Information Act (FOIA) request to the FBOP requesting documents and information pertaining to the death of Mr. Frederick at USP Hazelton.

49.     On October 24, 2019, nearly a year and a half later, the FBOP responded to Plaintiff's FOIA request.

50.     The FBOP's production on October 24, 2019 in response to Plaintiff's FOIA request makes no reference to the second stabbing incident that caused Mr. Frederick's death, does not contain video footage from the morning of Mr. Frederick's death, does not contain a statement from Mr. Frederick's cell mate (or any other inmate) who might have knowledge regarding the stabbing that caused Mr. Frederick's death, and does not indicate that any investigation into the stabbing death of Mr. Frederic was ever completed.

51.     Nevertheless, despite providing no explanation for Mr. Frederick's death, in its denial of liability letter dated September 10, 2019, the FBOP states in conclusory fashion that, "there is no evidence of BOP staff negligence, and if there was negligence, is was not on behalf of the BOP."

## NEGLIGENT/WRONGFUL CONDUCT

52.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 51 as though fully set forth herein.

53.     At all times relevant hereto, the FBOP, through its agents and employees, owed Mr. Frederick a duty of care.

54. At all times relevant hereto, the FBOP, through its agents and employees, had a duty to ensure the reasonable safety of inmates at UPS Hazelton, including Mr. Frederick.

55. At all times relevant hereto, the FBOP, through its agents and employees, had a duty to adequately staff UPS Hazelton to ensure, among other things, the reasonable safety of inmates at USP Hazelton, including Mr. Frederick.

56. At all times relevant hereto, the FBOP, through its agents and employees, had a duty to properly train and supervise its staff to ensure, among other things, the reasonable safety of inmates at USP Hazelton, including Mr. Frederick.

57. As set forth hereinabove, the FBOP, through its agents and employees, breached its duty of care to Mr. Frederick by, among other things:

   a) Failing to protect Mr. Frederick from being attacked by another inmate on June 19, 2017;

   b) Failing to adequately staff USP Hazelton to ensure the safety of Mr. Frederick when he was attacked by another inmate on June 19, 2017;

   c) Failing to separate and/or segregate Mr. Frederick from the inmate he was involved in an altercation with on June 19, 2017 or any of said inmate's known associates, acting in concert with said inmate or failing to separate and/or segregate Mr. Frederick from other inmates following the altercation to prevent further foreseeable violence;

   d) Failing to properly supervise and/or monitor Mr. Frederick and the inmate he was involved in an altercation with on June 19, 2017, or said inmate's known associates, following the altercation to prevent further foreseeable violence;

e) Failing to adequately staff USP Hazleton to ensure the safety of Mr. Frederick and to prevent foreseeable violence or further foreseeable violence following the incident on June 19, 2017;

f) Failing to properly supervise staff at USP Hazleton to ensure the safety of Mr. Frederick and to prevent further foreseeable violence following the incident on June 19, 2017; and

g) Failing to properly train staff at USP Hazleton in, among other things, how to protect inmates who were involved in recent violence, to ensure the safety of Mr. Fredrick and to prevent future foreseeable violence following the incident on June 19, 2017.

h) Failing to properly supervise and monitor Mr. Frederick for signs, symptoms or complaints following his return from Ruby Memorial Hospital.

58. At all times relevant hereto, agents and employees of the FBOP at USP Hazelton where acting within the scope of their employment.

59. As a direct and proximate result of the FBOP's breach of its duties of care, Mr. Frederick suffered severe and painful injuries on June 19, 2017.

60. As a direct and proximate result of the FBOP's breach of its duties of care, Mr. Frederick suffered a violent, painful, and untimely death on June 21, 2017.

61. As a direct and proximate result of the FBOP's negligent, reckless, and wrongful actions and omissions, Mr. Frederick suffered conscious pain and suffering and an untimely death on June 21, 2017.  Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia wrongful death statute, W. Va. Code § 55-7-6.

**WHEREFORE**, Plaintiff demands judgment in his favor against Defendant in an amount to be proven at trial, together with post-judgment interest; for all damages recoverable under law; for attorneys' fees; for expenses and costs of litigation; and for such other and further relief this Honorable Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

> **BETTY BOLES, on behalf of the**
> **Estate of Khaalid Sharif Frederick,**
> **By Counsel**
>
> */s/ Eric J. Buckner*
> Eric J. Buckner (WVSB#9578)
> Katz, Kantor, Stonestreet & Buckner, PLLC
> 207 South Walker Street
> Princeton, WV  24740
> (304) 431-4050
> ebuckner@kksblaw.com