IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

BETTY BOLES,
as Administratrix of the
Estate of Khaalid Sharif Frederick,

        Plaintiff,

v.                              CIVIL ACTION NO. 1:20CV41
                                   (Judge Keeley)

THE UNITED STATES OF AMERICA,

        Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S
MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43]
AND DISMISSING CASE WITH PREJUDICE**

On March 9, 2020, the Plaintiff, Betty Boles ("Boles"), as the administratrix of the Estate of Khaalid Sharif Frederick ("Frederick"), filed this wrongful death action against the United States of America ("United States") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671, et seq. (Dkt. No. 1). At the time of his death, Frederick was a prisoner in the custody of the Federal Bureau of Prisons ("BOP") at USP Hazelton. Boles, who is Frederick's sister, alleges that the BOP breached its duty to reasonably ensure Frederick's safety, and thereby caused his death.

Pending are several motions filed by the Government to dismiss Boles's claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) (Dkt. Nos. 10, 29, 43). The Government claims that it is immune from Bole's suit because its allegations fall within the discretionary function exception to the FTCA.

**BOLES V. USA**                                                **1:20CV41**

### MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43] AND DISMISSING CASE WITH PREJUDICE

Following four (4) months of discovery and several hearings on this issue, the Court concludes that Boles's claim is barred by the discretionary function exception and that it lacks jurisdiction to address her claim.

### I. BACKGROUND

**A.   Factual History**

On June 19, 2017, Frederick sustained puncture wounds to his stomach and back during an altercation with another inmate in a general population housing unit at USP Hazelton[1] (Dkt. No. 1 at 5). The BOP transported Frederick to Ruby Memorial Hospital ("Ruby") for treatment. At Ruby, the doctors ordered x-rays and CT scans of his chest and pelvis. Id. These diagnostic tests revealed that Frederick had two "superficial" puncture wounds involving "only subcutaneous fat of the body wall." Frederick remained overnight at Ruby for observation and was discharged on June 20, 2017. Id. at 6.

On June 21, 2017, at approximately 9:30 A.M., while in his cell in the Special Housing Unit ("SHU") at USP Hazelton, Frederick told a guard that he needed medical attention. Id. After the guard placed him in hand restraints and transferred him to a holding

---

[1] The facts are taken from the Complaint and are construed in the light most favorable to the plaintiffs. See Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009)

**BOLES V. USA**                                                    **1:20CV41**

**MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S
MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43]
AND DISMISSING CASE WITH PREJUDICE**

cell, Frederick became unresponsive. Id. BOP staff moved Frederick

to the Health Services examination room, where he stopped

breathing. Id. At approximately 9:40 A.M., BOP staff initiated CPR,

transported Frederick to the Health Services trauma room, and

intubated him. Id. Paramedics arrived at 10:18 A.M., and pronounced

Frederick dead at 10:22 A.M. Id.

According to Boles, BOP records, which indicate Frederick

suffered from "cardiac arrest," conflict with an autopsy performed

on June 22, 2017, that concluded his death was a homicide.[2] The

autopsy report revealed that Frederick had sustained seven stab

wounds to his chest and back and died from a deep abdominal stab

wound that perforated his diaphragm and left lung.[3] Id. at 7.

Based on this report, Boles contends that, on either June 20

or June 21, 2017, Frederick was attacked a second time and

consequently sustained the stab wound that caused his death. Id.

She further alleges that the second attacker was either the same

inmate who attacked Frederick on June 19, 2017, or an associate of

---

[2]   The BOP incident report, dated June 21, 2017, also lists
Frederick's cause of death as homicide (Dkt. No. 11-1 at 20).

[3]   The autopsy also disclosed Frederick's other injuries,
including contusions, lacerations, hemorrhages, and abrasions on
his face, scalp, arms, fingers, wrist, knee, and shin (Dkt. No. 1
at 7).

BOLES V. USA                                      1:20CV41

**MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S
MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43]
AND DISMISSING CASE WITH PREJUDICE**

that inmate. Id. at 8.

Finally, Boles avers that, although she requested documents pertaining to Frederick's death from the BOP on May 9, 2018, it did not respond until October 24, 2019. Id. And that response did not reference a second altercation, contain any video footage of the morning of June 21, 2017, or provide a statement from his SHU cellmate. Id. It also did not indicate that the BOP had conducted an investigation into Frederick's death. Id. The BOP letter did state, however, that "there is no evidence of BOP staff negligence, and if there was negligence, it was not on behalf of the BOP."[4] Id.

Based on this history, Boles brings a single negligence claim on behalf of Frederick's estate. She contends the BOP breached its duty to ensure Frederick's reasonable safety by (1) failing to protect him from the June 19, 2017 altercation, (2) failing to adequately staff the facility and failing to train and supervise its employees, (3) failing to separate him his June 19, 2017 attacker,[5] or that inmates's associates, upon his return from Ruby,

---

[4] The Government maintains that there is no evidence a second attack occurred (Dkt. No. 11 at 4). Instead, it contends that Ruby failed to properly diagnose Frederick's injuries on June 19, 2017.

[5] The Government acknowledged that Frederick was not housed separately from the inmate who stabbed him on June 19, 2017, until after he returned from Ruby (Dkt. No. 11 at 3). Boles

BOLES V. USA                                      1:20CV41

**MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S
MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43]
AND DISMISSING CASE WITH PREJUDICE**

(4) failing to supervise and monitor him in the SHU, and (5)

failing to transfer him out of the SHU. Id. at 9-10.

B.    **Procedural History**

i. **Government's Motion to Dismiss**

On July 14 2020, the Government moved to dismiss Boles's claim

for lack of jurisdiction pursuant to the discretionary function

exception to the FTCA (Dkt. No. 10). It contended that no statute,

regulation, or policy dictates how BOP employees must control

contraband weapons, intervene in inmate fights, investigate the

risk of inmate altercations, or decide where to confine inmates.

Id. at 5. Accordingly, the discretionary function exception to the

FTCA deprives the Court of jurisdiction over this case. Id. at 12.

The Government next asserted that its duty to protect its

inmates does not guarantee a risk-free environment. Id. at 9. And,

it is only liable for negligence when it knew, or reasonably should

have known, about a potential conflict between inmates, which it

did not in Frederick's case. Id.

Boles responded that the Court should not dismiss her case

without first authorizing jurisdictional discovery to resolve

_____

misinterpreted this statement to mean that these inmates were not
separated "once he returned to [USP] Hazelton" (Dkt. No. 15 at 7)
(adding her own language).

5

BOLES V. USA                                          1:20CV41

### MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43] AND DISMISSING CASE WITH PREJUDICE

factual disputes (Dkt. No. 15 at 7). She then contended that the discretionary function exception is inapplicable to her case because the BOP knew or should have known about the conflict between Frederick and the inmate who stabbed him on June 20 or 21, 2017, and because BOP staff violated nondiscretionary policies (Dkt. No. 15 at 10).

After hearing argument on July 30, 2020, the Court held the Government's motion in abeyance in order to resolve two factual disputes essential to its jurisdictional inquiry (Dkt. No. 18, 19). First, the parties disputed whether, after Frederick returned to USP Hazelton, BOP staff failed to separate him from the inmate, or a known associate of the inmate, who attacked him on June 19, 2017 (Dkt. No. 15 at 4). Although adamant that Frederick was housed separately from his attacker in the SHU, the Government provided no information as to the identity of his SHU cellmate or whether that cellmate was affiliated with Frederick's previous attacker (Dkt. Nos. 11 at 3). Had the BOP housed Frederick with the inmate who stabbed him on June 19, 2017, or a known associate of that inmate, such arguably was the result of carelessness. See Rich v. United States, 811 F.3d 140, 147 (4th Cir. 2015) (explaining, in dicta, that the discretionary function exception may not apply to conduct

6

**BOLES V. USA**                                              **1:20CV41**

**MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S
MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43]
AND DISMISSING CASE WITH PREJUDICE**

marked by carelessness).

Second, the parties disputed whether Frederick had been attacked on either June 20 or 21, 2017. According to Boles, the inconsistent injuries documented in the medical records from Ruby and the autopsy report supported her theory that Frederick was attacked a second time while housed in the SHU. (Dkt. Nos. 15 at 3, 14 at 73). In her view, this evidence refuted the Government's arguments that no second attack occurred, and that Ruby failed to properly diagnose Frederick's injuries in the first instance (Dkt. No. 11 at 4).

Because of these factual disputes, the Court ordered limited jurisdictional discovery (Dkt. No. 19). The Government agreed to produce the full investigation report regarding Frederick's death, including all photos and information about Frederick's SHU cellmate, as well as any video evidence. The parties exchanged initial discovery and the Government eventually disclosed documents relevant to its investigation into Frederick's death. Using this discovery, it then supplemented its motion to dismiss on September 18, 2020 (Dkt. No. 29).

**ii. Government's Supplemental Motion to Dismiss**

In its supplemental motion, the Government argued that, prior

**BOLES V. USA**                                                    **1:20CV41**

**MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S
MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43]
AND DISMISSING CASE WITH PREJUDICE**

to placing any inmate in the SHU, BOP staff review relevant records to determine the reason why an inmates is being housed in the SHU and whether such placement poses any security threat. Id. at 2. Regarding Frederick, it asserted that, on June 20, 2017, his cellmate had been assigned to the SHU based on disciplinary infractions unrelated to the June 19, 2017 altercation involving Frederick.[6] Id. at 2. And prior to reassigning that inmate, BOP staff had reviewed his relevant records and determined his placement posed no security threat. There was no separatee note in his records, no identified gang affiliations, and no indication that he was associated with the inmate who had stabbed Frederick. Id.

In her response to the Government's contention that the discretionary function exception barred her claim, Boles maintained that the BOP failed to separate Frederick from his attacker or his associates (Dkt. No. 30 at 3). She next alleged, for the first time, that the BOP failed to properly monitor Frederick in the SHU and failed to adequately train its staff to search for contraband in the SHU. Id. Boles then requested additional discovery as to whether any BOP policy relevant to these two allegations existed,

---

[6] Specifically, the inmate had been moved to the SHU for engaging in a sexual act and refusing to obey an order (Dkt. No. 29 at 2).

BOLES V. USA                                          1:20CV41

**MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S
MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43]
AND DISMISSING CASE WITH PREJUDICE**

and if so, to determine whether such policies mandated a course of action. Id. at 4.

On October 2, 2020, the Court again heard argument on the Government's motions and extended the time for jurisdictional discovery by an additional thirty (30) days (Dkt. Nos. 34, 36). After the Government produced supplemental discovery, Boles did not amend her complaint again (Dkt. No. 41, 42).

### iii. Government's Second Supplemental Motion to Dismiss

On November 9, 2020, the Government filed its Second Supplement to Motion to Dismiss, to which Boles did not respond (Dkt. No. 43). According to the Government, before inmates enter the SHU at USP Hazelton, they are pat searched by BOP staff. Id. at 3. And once in the SHU, BOP staff search inmates with a hand-held metal detector and a scanning machine. Id. Inmates then undergo documented visual searches, which include searching all body surfaces and cavities. Id. After being searched, inmates are often assigned a cellmate. Id. at 4. BOP staff observe all inmates in the SHU "at least once in the first 30-minute period of an hour followed by another round in the second 30-minute period of the same hour" and record their rounds. Id. As time permits during their shifts, BOP staff also conduct at least five (5) common area

9

**BOLES V. USA**                                             **1:20CV41**

**MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S
MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43]
AND DISMISSING CASE WITH PREJUDICE**

or inmate cell searches and document any contraband found. Id.

The Government has averred that BOP staff visually searched Frederick and his cellmate upon their entry into the SHU and discovered no contraband or weapons. Id. at 4. Also, for the two days that Frederick was housed in the SHU, his cell was observed at least twice per hour. Id. BOP staff, however, were not required to search Frederick's cell during this time, and it was not searched. Id. However, BOP staff did routinely search common areas and inmate cells during this time frame, but found no weapons. Id.

The Government also provided a timeline of events on June 21, 2017. At 7:40 A.M., BOP staff held a Unit Disciplinary Committee meeting in Frederick's cell. BOP staff recalled that Frederick displayed no signs of distress and there was no apparent hostility between the cellmates. At 9:24 A.M., a BOP guard observed Frederick's cell. At 9:25 A.M., the BOP guard returned to the cell after hearing an inmate yell "[C]ome back to 150, I need a nurse," and observed Frederick sitting on the bottom bunk and his cellmate lying on the top bunk. Frederick appeared lethargic and requested medical attention, while grabbing his already bandaged abdomen. At 9:26 A.M., BOP staff placed Frederick and his cellmate in hand restraints. BOP staff then administered the medical treatment

BOLES V. USA                                          1:20CV41

**MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S
MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43]
AND DISMISSING CASE WITH PREJUDICE**

described in Boles's complaint. At 10:22 A.M., Frederick was
pronounced dead. At 10:24 A.M., an evidence recovery team was
activated, and from 11:35 A.M. to 1:05 P.M. the recovery team
searched and documented all evidence found in the cell. No weapons
were recovered from the cell or the person of Frederick's cellmate.

Based on this discovery and the parties' extensive briefings,
the issue of whether the discretionary function exception deprives
the Court of jurisdiction over Boles's claim is ripe for review.

## II. STANDARD OF REVIEW

A party may assert the defense of lack of subject matter
jurisdiction by motion. Fed. R. Civ. Pro. 12(b)(1). While the
burden of proving jurisdiction is on the plaintiff, if the Court
determines "at any time that it lacks subject matter jurisdiction,
the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); Adams
v. Bain, 997 F.2d 1213, 1219 (4th Cir. 1982). "When a defendant
asserts that the complaint fails to allege sufficient facts to
support subject matter jurisdiction, the trial court must apply a
standard patterned on Rule 12(b)(6) and assume the truthfulness of
the facts alleged." Kerns, 585 F.3d at 193. Alternatively, where,
as here, the defendant challenges the veracity of the facts
underpinning subject matter jurisdiction, the trial court may go

BOLES V. USA                                          1:20CV41

**MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S
MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43]
AND DISMISSING CASE WITH PREJUDICE**

beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts." Id. And when the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous. Id. (citing Bell v. Hood, 327 U.S. at 682, 682 (1946)).

## III. DISCUSSION

It is well established that the United States, as sovereign, is immune from suit unless it consents to be sued. The terms of its consent define the Court's jurisdiction to entertain suit against the Government. Gould v. U.S. Dep't of Health & Human Servs., 905 F.2d 738, 741 (4th Cir. 1990) (citing United States v. Sherwood, 312 U.S. 584, 586 (1941)). The FTCA waives the sovereign immunity of the United States and allows suits against it for personal injuries caused by government employees acting within the scope of their employment. See 28 U.S.C. § 1346(b), § 2671 et seq. Therefore, in the present case, only if the United States has waived sovereign immunity under the FTCA does this Court have jurisdiction to address Boles's claim.

## A.   Administrative Exhaustion

Before filing suit under the FTCA, Boles was required to

**BOLES V. USA**                                                    **1:20CV41**

### MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43] AND DISMISSING CASE WITH PREJUDICE

exhaust her administrative remedies. 28 U.S.C. § 2675(a). Under the FTCA, a tort claim against the United States must be presented to the appropriate agency within two years of its accrual by submitting a Form 95 and a sum certain claim for money damages for the injury or death alleged to have occurred.[7] 28 C.F.R. § 14.2. If the agency denies the claim, the claimant may file suit within six (6) months. 28 U.S.C. § 2401(b).

Here, Boles has summarily contended that she exhausted her administrative remedies (Dkt. No. 1 at 1). The BOP denied her claim on September 10, 2019, giving her until March 10, 2020 to assert her FTCA claim in court. Id. at 1-2. Boles filed her complaint within six months of the alleged denial date, but did not include the date on which she had presented her claim to the BOP or a copy of her Form 95.[8] Boles's counsel, however, has represented that

---

[7] An FTCA claim accrues when a plaintiff is aware of the existence of the injury and its cause such that she is "sufficiently armed" with "critical facts" to investigate the claim. Gould, 905 F.2d at 743; see e.g., Amburgey v. United States, 733 F.3d 633, 638 (6th Cir. 2013)(holding that the plaintiff's wrongful death FTCA claim accrued after she received the autopsy report, not on the date of her husband's death). Here, the date of accrual is unclear because it is unknown when Boles received notice of Frederick's death or learned that the autopsy report ruled his death a homicide.

[8] Additionally, under West Virginia law, a wrongful death action shall be brought by the appointed personal representative of the deceased. See W. Va. Code § 55-7-6(a). Boles alleges that she has authority to bring this claim on Frederick's behalf in this capacity, but has offered no proof of her appointment. The

13

BOLES V. USA                                              1:20CV41

**MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S
MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43]
AND DISMISSING CASE WITH PREJUDICE**

Boles presented her executed Form 95 requesting two million dollars in damages for Frederick's death to the BOP within two years of the accrual of her claim. As the Government has not challenged Boles's satisfaction of this administrative requirement, for the purpose of resolving these motions the Court assumes that Boles's claim has been finally denied by the BOP and that she has exhausted her administrative remedies.

**B.  Discretionary Function Exception**

"The FTCA creates a limited waiver of the United States' sovereign immunity by authorizing damages actions for injuries caused by the tortious conduct of federal employees acting within the scope of their employment, when a private person would be liable for such conduct under state law." Suter v. United States, 441 F.3d 306, 310 (2006)(citing 28 U.S.C. § 1346(b)(1)).[9] This waiver is subject to various exceptions, including one for the performance of discretionary functions. Sanders v. United States,

_____

Government did not contest her authority and the Court assumes that Boles has standing to bring this case for the purpose of resolving the pending motions.

[9] West Virginia Code § 55-7-5 authorizes a decedent's personal representative to recover damages from a person or entity who negligently caused the decedent's death. Accordingly, Boles may assert this wrongful death FTCA claim because a private person would be liable under West Virginia law for negligence causing Frederick's death.

BOLES V. USA                                          1:20CV41

**MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S
MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43]
AND DISMISSING CASE WITH PREJUDICE**

937 F.3d 316, 327 (4th Cir. 2019). This "discretionary function exception" immunizes the Government from "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

"FTCA plaintiffs have the burden of showing that the discretionary function exception does not foreclose their claim." Seaside Farm, Inc. v. United States, 842 F.3d 853, 857 (4th Cir. 2016). But "unduly generous interpretations" of the FTCA exceptions "run the risk of defeating the central purpose of the statute, which waives the Government's immunity from suit in sweeping language." Sanders, 937 F.3d at 327 (citing Dolan v. U.S. Postal Serv., 546 U.S. 481, 491–92 (2006)).

Courts conduct a two-step analysis to determine if the discretionary function exception applies. First, courts must determine if the conduct at issue "involves an element of judgment or choice." Wood v. United States, 845 F.3d 123, 128 (2017)(citing Berkovitz v. United States, 486 U.S. 531, 536 (1988). When a statute, regulation, or policy prescribes the employee's conduct, such conduct cannot be discretionary and is therefore unprotected

BOLES V. USA                                              1:20CV41

### MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43] AND DISMISSING CASE WITH PREJUDICE

by the discretionary function exception. Wood, 845 F.3d at 128. Second, courts must determine whether the challenged conduct is based on considerations of public policy. Id. (quoting Berkovitz, 486 U.S. at 537). This step "prevent[]s judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy...." Sanders, 937 F.3d at 328.

When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. Gaubert, 499 U.S. at 324. "In short, the discretionary function exception ... shield[s] decisions of a government entity made within the scope of any regulatory policy expressed in statute, regulation, or policy guidance, even when made negligently." Wood, 845 F.3d at 128. Therefore, to survive a motion to dismiss, a complaint must allege facts supporting a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. Id. at 24-25.

### C.  Analysis

The discretionary function exception immunizes the Government from Boles's claim if the challenged BOP conduct "involve[d] an

BOLES V. USA                                              1:20CV41

**MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S
MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43]
AND DISMISSING CASE WITH PREJUDICE**

element of judgment or choice" and was based on considerations of
public policy. Wood, 845 F.3d at 128 (2017). Pursuant to this
construct, the Court turns to address each of Boles's allegations
of negligent conduct.

  **i. Element of Judgment or Choice**

   **1. Failure to Protect**

  Boles first alleges that the BOP failed to protect Frederick
before the incidents, on June 19, 2017, and June 20 or 21, 2017
(Dkt. Nos. 1 at 9, 30 at 2-3). The BOP has a duty to provide for
the "protection," "safekeeping," and "care" of "all persons charged
with or convicted of offenses against the United States." 18 U.S.C.
§ 4042(a)(2), (3). But under the statute's broad directives, the
BOP retains discretion to implement that mandate. Rich, 811 F.3d at
145.

  Courts in this District have uniformly held that decisions
regarding separating inmates from one another, preventing inmate
attacks, and controlling contraband weapons, the very decisions at
issue here, are discretionary, policy-based functions. Crawford v.
United States, 2019 WL 2366017, at *1, 7 (N.D.W. Va. June 4, 2019);
Evans v. United States, 2016 WL 4581339, at *1-2 (N.D.W. Va. Sept.
2, 2016). And, "a federal prisoner's claims under the FTCA for

17

BOLES V. USA                                              1:20CV41

**MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S
MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43]
AND DISMISSING CASE WITH PREJUDICE**

injuries caused by a fellow inmate are uniformly held to be barred by the discretionary function exception." <u>Little v. United States</u>, 2014 WL 4102377, at *1, 5-7 (N.D.W. Va. Aug. 18, 2014).

It is beyond dispute that the discretionary function exception applies to Boles's failure to protect claim. The BOP clearly retained discretion to discharge its duty to protect Frederick from other inmates and to control contraband weapons before and after the June 19, 2017 altercation.

Nevertheless, if Boles can establish that BOP staff failed to follow a specific mandatory directive intended to protect an inmate like Frederick, her claim would not be barred by the discretionary function exception. A directive is mandatory if "the employee has no rightful option but to adhere to the directive." <u>Berkovitz</u>, 486 U.S. at 536. Boles argued, for the first time in her response to the Government's supplemental motion to dismiss, that BOP staff had failed to protect Frederick because they did not search his cellmate for weapons when that inmate entered the SHU (Dkt. No. 30 at 4).

Although Boles conducted discovery into the existence of BOP policies related to the search of SHU inmates and cells, and the Government identified three such practices for maintaining SHU security, she has neither amended her complaint nor responded to

BOLES V. USA                                                    1:20CV41

### MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43] AND DISMISSING CASE WITH PREJUDICE

the motion. Nor has she alleged that these practices are mandatory or even formally established through duty post orders, Program Statements, Institutional Supplements, or the Correctional Service Manual, all of which describe various security measures to be implemented by BOP officials.

Nor is there any indication in the Government's pleading that these practices are mandatory or formally implemented. The SHU security practices were identified by Joshua Brawley, the executive assistant at USP Hazelton, who stated that, prior to entering the SHU, inmates undergo pat, electronic, and visual searches (Dkt. No. 43 at 3-4). He does not state, however, that this directive is a formal policy at USP Hazelton or that any other procedure exists that BOP staff must follow to properly conduct these searches. According to Brawley, as time permits, BOP staff conduct at least five (5) searches of common areas and cells per shift. Id. at 4. This practice allows BOP staff to rely on their observations and experience to determine which areas should be searched and how frequently searches are needed.

The record in this case establishes that the BOP adopted these discretionary practices to fulfill its duty to protect inmates. Without a mandatory directive prescribing a course of conduct, decisions involving the control of contraband and protection of

**BOLES V. USA**                                                    **1:20CV41**

**MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S
MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43]
AND DISMISSING CASE WITH PREJUDICE**

inmates from one another constitute discretionary, policy-based functions. <u>Crawford</u>, 2019 WL 2366017, at *1. Therefore, as Boles has not identified any policy which mandates BOP conduct, she cannot avoid the discretionary function exception. <u>Seaside Farm</u>, 842 F.3d at 857.

Additionally, the Government has produced evidence establishing that BOP staff were not careless in carrying out these protocols in this case. BOP staff reviewed the inmate records for both Frederick and his SHU cellmate prior to their assignments to the SHU and discovered no reason to separate them (Dkt. No. 29 at 2). Both inmates were visually searched for weapons upon entering the SHU (Dkt. No. 43 at 2-4). Moreover, although BOP staff searched common areas and inmate cells throughout their shifts, they found no weapons or any other reason to search Frederick's shared cell. <u>Id.</u>

Based on this record, Boles has failed to allege any mandatory policy depriving BOP staff of their discretion to protect Frederick.

**2.   Failure to Staff, Supervise, and Train**

Boles next contends that the BOP failed to adequately staff the facility and failed to train and supervise its employees (Dkt.

BOLES V. USA                                              1:20CV41

**MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S
MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43]
AND DISMISSING CASE WITH PREJUDICE**

No. 1 at 9-10). She later expanded on this theory by asserting the BOP failed to train its staff to discover weapons in the SHU (Dkt. No. 30 at 4).

Decisions of hiring, supervising, and training employees essentially involve judgment and policy considerations, and are "precisely the types of decisions that are protected under the discretionary function exception." LeRose v. United States, 285 F. App'x 93, 96-97 (4th Cir. 2008). For example, BOP officials must evaluate applicant qualifications, consider staffing requirements, assess training needs as well as budgetary considerations, and, on a daily basis, make numerous decisions regarding supervision of employees. Id.; Dorsey v. Relf, 2013 WL 781604, at *5 (N.D. Tx. Mar. 4, 2013). These multi-faceted choices require the balancing of competing objectives, and are of the nature and quality that Congress intended to shield from tort liability. LeRose, 285 F.App'x at 96. Therefore, BOP decisions regarding staffing at USP Hazelton, as well as the supervision and training of employees, involve an element of judgment or choice.

**iii. Failure to Separate**

Boles has alleged that the BOP failed to separate Frederick from the person who stabbed him, or his known associate, before or

BOLES V. USA                                           1:20CV41

**MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S
MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43]
AND DISMISSING CASE WITH PREJUDICE**

after the June 19, 2017 incident (Dkt. No. 1 at 9-10). 28 C.F.R. §
524.72 permits, but does not require, the BOP to separate certain
inmates based on past behavior. "[P]rison officials must consider
several factors and exercise independent judgment in determining
whether inmates may require separation." Rich, 811 F.3d at 145
(barring an FTCA claim based on allegations that the BOP should
have housed an inmate separately from gang members affiliated with
the inmate who previously had attacked him). Accordingly, BOP staff
retain discretion to determine where to house inmates and whether
to separate certain inmates from one another, and such separation
decisions are outside the scope of the FTCA. Id.

Here, BOP staff retained discretion to determine whether
Frederick should have been separated from any other inmate before
and after the June 19, 2017 altercation. Had the BOP's housing
decisions been careless, or had Frederick's SHU cellmate been the
same inmate with whom he had had an altercation on June 19, 2017,
or one of that inmate's known associates, those decisions would not
be protected by the discretionary function exception. Rich, 811
F.3d at 147. But this is not the case here, where there is
undisputed evidence that, upon his return from Ruby to USP
Hazelton, Frederick was housed separately from the inmate who
stabbed him on June 19, 2017. The Government has also established

22

**BOLES V. USA**                                                    **1:20CV41**

**MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S
MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43]
AND DISMISSING CASE WITH PREJUDICE**

that Frederick's SHU cellmate had no known association with the
inmate involved in the June 19, 2017 altercation, and that there
was no security risk in placing him with Frederick. Thus, the BOP's
decisions as to where to house Frederick, whether to place him in
a shared cell, and who his cellmate should be either before and
after the June 19, 2017, incident involved judgment or choice.

### iv.  Failure to Supervise and Monitor

Boles has alleged that BOP staff failed to adequately monitor
Frederick for signs of physical distress following his return from
Ruby (Dkt. No. 1 at 10). She later added that BOP staff had failed
to supervise Frederick adequately while in his shared cell in the
SHU, thereby allowing a second stabbing to occur on June 20 or 21,
2017 (Dkt. No. 30 at 2-3). These arguments fail, however, because
no BOP policy mandates a course of action for inmate monitoring in
the SHU.

Pursuant to 18 U.S.C. § 4042 (a)(2), the BOP had a duty to
provide for Frederick's safekeeping. However, the BOP retained
discretion in determining how to care for and supervise Frederick
while he was in the SHU. Rich, 811 F.3d at 145.

Boles contends that 28 C.F.R. § 541.31 is a mandatory policy
that deprives BOP staff of their discretion in monitoring inmates
housed in the SHU (Dkt. No. 15 at 12). However, § 541.31(m) merely

BOLES V. USA                                              1:20CV41

MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S
MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43]
AND DISMISSING CASE WITH PREJUDICE

provides that inmates in the SHU "will be monitored by staff," thus

clearly vesting BOP staff with the discretion to determine how to

monitor Frederick while in the SHU.

Moreover, the implementing instruction for § 541.31(m) states:

Program staff, including unit staff, arrange to visit
inmates in the SHU within a reasonable time after
receiving the inmate's request.

In addition to direct supervision by the unit officer,
qualified health personnel and one or more responsible
officers the Warden designates (ordinarily the
Institution Duty Officer) visit each segregated inmate
daily, including weekends and holidays. A Lieutenant must
visit the SHU during each shift to ensure all procedures
are followed.

Federal Bureau of Prisons, Program Statement 5270.11, at 14 (Nov.

23, 2016).

While this program statement obligates BOP staff to visit

inmates upon request, it merely requires that such visits occur

"within a reasonable time," without defining this term. It vests

discretion in BOP staff to prioritize their response among their

other duties. The program statement also calls for "direct

supervision," but does not explain how BOP staff may meet this

requirement. Because Program Statement 5270.11 includes suggestive,

permissive, and discretionary language, as well as specific

directives, it is discretionary. Gonzalez v. United States, 814

F.3d 1022, 1029 (9th Cir. 2016) (considering the language of a

24

BOLES V. USA                                              1:20CV41

MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S
MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43]
AND DISMISSING CASE WITH PREJUDICE

guideline "as a whole" to determine whether it mandated certain conduct); Herden v. United States, 726 F.3d 1042, 1047 (8th Cir. 2013) (finding the discretionary function exception applicable to a code with predominantly permissive language mixed with mandatory language); see e.g., Warren v. United States, 244 F. Supp. 3d 1173, 1243 (D.N.M. 2017) (finding that the discretionary function exception applied to a policy requiring BOP staff to regularly inspect all areas accessible to inmates and maintain visual contact with holding cells at all times).

Notably, Boles has not alleged that BOP staff failed to respond to a request by Frederick "within a reasonable time," or that a qualified health personnel or responsible officer failed to visit him as required. Instead, she contends that BOP staff failed to monitor Frederick's cell in the SHU and that adequate monitoring would have allowed BOP staff to notice signs of distress or would have prevented a second attack. Program Statement 5270.11, however, is discretionary and does not mandate a course of conduct for inmate monitoring in the SHU.

Finally, the Government has established that SHU staff at USP Hazelton observe each cell at least once every thirty minutes (Dkt. No. 43 at 4). This practice is not mandated in a statute, regulation, or policy. While this custom prescribes a minimum

25

BOLES V. USA                                          1:20CV41

**MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S
MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43]
AND DISMISSING CASE WITH PREJUDICE**

standard of conduct, it does not wholly deprive SHU staff of discretion. It does not state what constitutes proper observation or mandate how staff must conduct their rounds. Further, while Frederick was housed in the SHU BOP staff observed his cell twice per hour, held a meeting in his cell at 7:40 A.M. on June 21, 2017, and last observed his cell 9:24 A.M., less than a minute before he called for help. Id. at 4. Accordingly, BOP staff were not careless in monitoring Frederick in the SHU, nor would any further observation have allowed staff to better respond to Frederick or protect him from an attack.

### v. Failure to Transfer

Finally, Boles has alleged that the BOP failed to transfer Frederick out of the SHU in a timely manner[10] (Dkt. No. 30 at 3). She has contended that BOP staff violated non-discretionary Program Statement 5270.11, which authorizes the BOP to place inmates in the SHU for disciplinary and administrative segregation purposes.[11]

---

[10] It is worth noting that Boles raised this theory for the first time in response to the Government's motion to dismiss (Dkt. No. 30). Accordingly, the Court need not consider this new claim. To the extent that it may fairly be viewed as an extension of her failure to protect theory, however, the Court will consider her argument.

[11] This Program Statement pertains to 28 C.F.R. § 541.27(d), which describes the circumstances in which an inmate may be placed in administrative detention as a protection case.

26

**BOLES V. USA**                                                        **1:20CV41**

**MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S
MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43]
AND DISMISSING CASE WITH PREJUDICE**

Specifically, this program statement provides:

When an inmate is placed in Administrative Detention for
an investigative period and the threat is verified,
correctional officers should seek alternative housing, by
transferring the threatened inmate either to the general
population of another institution or to a special-purpose
housing unit for inmates who face similar threats, with
conditions comparable to those of the general population.

When the inmate poses such security risk that even a
special-purpose housing unit is insufficient to ensure
the inmate's safety and the safety of staff, other
inmates, and the public, the inmate may be housed in more
restrictive conditions. The inmate's placement should be
regularly reviewed to monitor any medical or mental
health deterioration and to determine whether the
security risks have subsided.

Federal Bureau of Prisons, Program Statement 5270.11, at 8 (Nov.
23, 2016).

Assuming that Frederick was in the SHU for an investigative
period and that the threat against him was "verified" one day after
the June 19, 2017 incident, Program Statement 5270.11 indicates
that correctional officers "should" seek alternative housing. Id.
It also provides that, in certain cases, BOP staff "may" place
inmates in more restrictive housing and that such placement "should
be regularly reviewed." Id.

The language used within this program statement clearly
involves elements of judgment or choice. It neither requires
correctional officers to seek alternative housing nor mandates the

27

**BOLES V. USA**                                                    **1:20CV41**

**MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S
MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43]
AND DISMISSING CASE WITH PREJUDICE**

time requirement for their review of an inmate's housing. Because
it "repeatedly limits its own recommendations," it cannot be
characterized as mandatory. Hart v. United States, 630 F.3d 1085,
1090 (8th Cir. 2011). Accordingly, Program Statement 5270.11 does
not mandate any conduct that the BOP violated by failing to
transfer Frederick out of the SHU less than two days after he
returned from Ruby. BOP staff retained discretion to determine if
and when such transfer was warranted.

**vi. Policy Considerations**

Boles has made no argument regarding the policy element of the
discretionary function exception. However, because each instance of
alleged negligent conduct involves an element of judgment or
choice, it may be presumed that the BOP's decisions relative to
Frederick were grounded in policy. Gaubert, 499 U.S. at 324.

Accordingly, each instance of negligent conduct alleged by
Boles involved an element of judgment or choice and implicated
public policy considerations. As Boles has not met her burden of
"showing that the discretionary function exception does not
foreclose [her] claim," Seaside Farm, 842 F.3d at 857, the Court
lacks jurisdiction to address the merits of her wrongful death
suit. See Holbrook v. United States, 673 F.3d 341, 345 (4th Cir.
2012).

**BOLES V. USA**                                              **1:20CV41**

**MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S
MOTIONS TO DISMISS [DKT. NOS. 10, 29, 43]
AND DISMISSING CASE WITH PREJUDICE**

## IV. CONCLUSION

For the reasons discussed, the Court:

1.    **GRANTS** the Government's motion to dismiss (Dkt. No. 10);

2.    **GRANTS** the Government's supplemental motion to dismiss (Dkt. No. 29);

3.    **GRANTS** the Government's second supplemental motion to dismiss (Dkt. No. 43); and

4.    **DISMISSES** the Plaintiff's claim for wrongful death **WITH PREJUDICE** and **DIRECTS** that it be stricken from the Court's active docket.

The Clerk **SHALL** enter a separate judgment order and transmit copies of both orders to counsel of record.

DATED: February 9, 2021.

                                    /s/ Irene M. Keeley
                                    IRENE M. KEELEY
                                    UNITED STATES DISTRICT JUDGE